## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

SUPERIOR SCAPE, INC.,

      Plaintiff,

v.                                          Case No. 21-12889

JCB DESIGN & BUILD, LLC, and
JASON BRYAN

      Defendants.
_____/

### OPINION AND ORDER DENYING PRELIMINARY INJUNCTION

Plaintiff Superior Scape, Inc., brings this action under the federal Defend Trade

Secrets Act ("DTSA"), 18 U.S.C. § 1836(b), and further asserts Michigan state law

claims for breach of contract and tortious interference with business relationships. (ECF

No. 1, PageID.22-40.) It alleges that Defendant Jason Bryan, and his competing

company Defendant JCB Design & Build, LLC ("JCB"), have misappropriated trade

secrets, unfairly competed, and solicited Plaintiff's employees in violation of a

settlement agreement between the parties. Plaintiff has requested a jury trial on these

issues and further seeks more than $300,000 in damages pursuant to a liquidated

damages clause.

On December 9, 2021, Plaintiff brought an emergency, *ex parte* motion for a

temporary restraining order or preliminary injunction. (ECF No. 2.) The crux of its motion

is that Defendants must be enjoined from soliciting Plaintiff's "long-term and well-trained

H-2B employees"[1] in violation of their settlement agreement, and such action must be taken immediately or else Plaintiff faces the possibility of losing these H-2B employees for their term of employment, which begins in April 2022. (ECF No. 2, PageID.165.) The court denied the request for a temporary restraining order, but it directed Defendants to show cause why a preliminary injunction should not be issued against them. (ECF No. 4.) Defendants filed a response (ECF No. 20), and Plaintiff replied. (ECF No. 13.) For the reasons set forth below, Plaintiff's motion for a preliminary injunction will be denied.

## I. BACKGROUND

Plaintiff is a landscaping company that has operated in Southeastern Michigan since 1984. (ECF No. 2, PageID.166-67.) Defendant Bryan began working for Plaintiff over ten years ago, eventually working his way up in the company and becoming vice president. (*Id.*, PageID.167.) In his role as vice president, Defendant Bryan was given access to an array of important trade information, such as customer contacts, workers' compensation data, pricing and costs data, financial information, and more. (*Id.*) However, his relationship with the company began to deteriorate after he was demoted for poor performance and began taking steps to start his own, competing landscaping company. (*Id.*, PageID.168.) According to Plaintiff, before quitting the company, "Defendant Bryan had secret meetings with certain long-term and critical foremen and seasonal employees in an attempt to convince them to leave [Plaintiff] and join his

---

[1] According to the Department of Labor ("DOL"), the "H-2B nonimmigrant program permits employers to temporarily hire nonimmigrants to perform nonagricultural labor or services in the United States. The employment must be of a temporary nature for a limited period of time such as a one-time occurrence, seasonal need, peakload need or intermittent need." *H-2B Program*, U.S. Department of Labor, https://www.dol.gov/agencies/whd/immigration/h2b (last visited December 30, 2021).

competing company." (*Id.*) He also allegedly took and misappropriated other confidential information and trade secrets to which he had access. (*Id.*, PageID.169.)

These facts gave rise to a lawsuit filed by Plaintiff on April 8, 2021. (*Id.*, PageID.170.) The parties resolved the dispute and entered into a settlement agreement. (*Id.*) The agreement provided, among other things, that "Defendants would return all trade secrets, pay [Plaintiff] $72,000, refrain from soliciting [Plaintiff's] employees and customers, change the name of their company, stop using images of [Plaintiff's] work in their advertising and social media postings, and refrain from making disparaging remarks." (*Id.*; ECF No. 1-2, PageID.112.) The alleged breach of this settlement agreement is the basis of the present action before the court. Notably, the settlement agreement's non-solicitation provision provides that Plaintiff "is entitled to liquidated damages in the amount of $30,000 for each violation or breach and is entitled to reimbursement for its costs and attorney fees incurred in having to enforce this provision of the Agreement." (ECF No. 1-2, PageID.112.)

Plaintiff claims "Defendants have shamelessly, intentionally and repeatedly breached the Settlement Agreement since it was signed." (ECF No. 2, PageID.171.) The primary issue is that Defendants "have been contacting [Plaintiff's] long-term and critical H-2B employees and soliciting them to leave . . . and join Defendant Bryan's competing business." (*Id.*) More specifically, it alleges that two employees of Defendant JCB, Antonio Gonzalez and Alex Mora, have contacted at least ten of Plaintiff's employees and asked them to work for Defendants. (ECF No. 1, PageID.21; ECF No. 2, PageID.179.) Affidavits submitted by three of Plaintiff's employees—Raúl Santana, Jose Antonio Luquin Coronel, and Julio Osvaldo Ramirez Loreto—assert that they were in

3

fact solicited by Defendants and offered jobs. (ECF Nos. 1-3, 1-4, 1-5.) The catalyst of these allegations appears to be an August 2021 barbeque cookout party for Antonio Gonzalez's son's birthday; among the attendees were some of Plaintiff's employees. (ECF No. 1-5, PageID.140; ECF No. 2, PageID.172; ECF No. 10, PageID.266.) Defendants claim that no solicitation occurred at this party. They further maintain that they have never solicited any of Plaintiff's employees, nor do they plan to. Defendants submitted three declarations from Defendant Bryan, Antonio Gonzalez, and Alex Mora attesting to this fact. (ECF Nos. 10-3, 10-4, 10-5.)

The exigency of Plaintiff's motion stems from its concern regarding the H-2B employee application process. Plaintiff maintains that the timing of Defendant's alleged breaches is critical because between January 3 and January 5, 2022, employers must submit H-2B applications in a lottery "for employment beginning April 1, 2022 or later for the 2022 landscaping season." (ECF No. 2, PageID.165.) Plaintiff "suspects that Defendants intend to take advantage of this timing and are *actively soliciting in breach of the Settlement Agreement for employment and sponsorship* of" Plaintiff's employees. (*Id.*) It fears, in part due to a labor shortage, that it "will be unable to hire or replace any H-2B workers if Defendants are permitted to solicit and sponsor them for employment and are not immediately enjoined." (*Id.*)

## II. STANDARD

The court considers four factors when deciding whether to grant a preliminary injunction. First, the court must determine "whether the plaintiff has established a substantial likelihood or probability of success on the merits of his claim." *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689-90 (6th Cir. 2014). Next, the court must consider

"whether the plaintiff would suffer irreparable injury if a preliminary injunction did not issue." *Id.* Finally, the court must analyze "whether the injunction would cause substantial harm to others" and "whether the public interest would be served if the court were to grant the requested injunction." *Id.*

The four factors "are to be balanced against each other. A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

### III. DISCUSSION

### A. Success on the Merits

While a party seeking a preliminary injunction need not "prove his case in full," the movant must still "show more than a mere possibility of success." *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) (quoting *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007)). A plaintiff may meet this standard by raising "questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir.1985)). Plaintiff's motion focuses on its claims for (1) violations of the federal DTSA; and (2) breach of contract.

### 1. Violations of DTSA

The DTSA provides a cause of action and remedy for the actual or threatened misappropriation of trade secrets. *See* 18 U.S.C. § 1836(b)(3); *FCA US LLC v. Bullock*,

446 F. Supp. 3d 201, 212 (E.D. Mich. 2020)**.** To establish such a claim, the plaintiff must show the existence of a trade secret and misappropriation. *See, e.g.*, *MPAY Inc. v. Erie Custom Computer Applications, Inc.*, 970 F.3d 1010, 1016 (8th Cir. 2020); *Ukrainian Future Credit Union v. Seikaly*, No. 17-CV-11483, 2017 WL 5665960, at *8 (E.D. Mich. Nov. 27, 2017).

A "trade secret" under the DTSA includes "all forms and types of . . . information," so long as "the owner thereof has taken reasonable measures to keep such information secret" and it "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). "Misappropriation" has several definitions, including "acquisition . . . by a person who knows or has reason to know that the trade secret was acquired by improper means." § 1839(5)*.* It also includes disclosure or use of a trade secret by a person who "knew or had reason to know that the knowledge of the trade secret was," as relevant here, "acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret," or "derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret." *Id.*

In its request for a preliminary injunction, Plaintiff advances its DTSA claim based on the allegation that Defendants "have retained and are using confidential employment terms of [Plaintiff's] H-2B employees to solicit and persuade employees to leave [Plaintiff] and join" Defendants. (ECF No. 2, PageID.178.) Plaintiff alleges that it "went to great measures to protect its specific employment terms from general public disclosure

and had reason to rely on the terms of the Settlement Agreement to further protect this information." (*Id.*)

It is true that the terms of one's employment may constitute trade secrets. *See Prudential Def. Sols., Inc. v. Graham*, No. 20-11785, 2020 WL 7706617, at *4 (E.D. Mich. Dec. 29, 2020) ("Employee information, including salary and contact information, can be used by a competitor to solicit and successfully lure away Plaintiff's employees."). Yet, Plaintiff provides little support for its DTSA claim. Aside from the vague statements above, there is a notable lack of evidence pertaining to when or where any particular "confidential employment terms" of employees were misappropriated. And while the court is inclined to agree with Plaintiff that the "exact terms of employment offered to these employees is highly confidential," it is unclear in this case what the misappropriated terms were or how they were improperly used against Plaintiff. *Cf. FCA US LLC v. Bullock*, 446 F. Supp. 3d 201, 212 (E.D. Mich. 2020) (citing *Utilase, Inc. v. Williamson*, 188 F.3d 510 (6th Cir. 1999)) (explaining that Michigan courts require alleged trade secrets to be identified "clearly, unambiguously, and with specificity"); *RGIS, LLC v. Gerdes*, No. 19-11866, 2019 WL 3958392, at *5, n.3 (E.D. Mich. Aug. 21, 2019) (noting the elements of misappropriation claims under the federal DTSA and the Michigan Uniform Trade Secrets Act "are substantially similar"), *aff'd*, 817 F. App'x 158 (6th Cir. 2020). To the extent Plaintiff relies on the affidavits submitted by Plaintiff's employees to make this showing, their statements do not allege that Defendants utilized any specific terms of employment; they allege only that Defendants made broad representations about how Defendants' company is superior

since there is "better equipment, less stress, and more money." (ECF Nos. 1-3, 1-4, 1-5.)

As a whole, Plaintiff has shown a "possibility of success," but given its reliance on the misappropriation of employment terms as a basis for its DTSA claim, a "substantial likelihood or probability of success on the merits of his claim" is less clear. This factor therefore weighs against granting a preliminary injunction.

## 2. Breach of Contract

To succeed on a breach of contract claim in Michigan, a party "must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Const., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014) (citing *Stevenson v. Brotherhoods Mut. Benefit*, 19 N.W.2d 494, 498 (Mich. 1945)).

Here, Defendants do not contest the fact that they were contractually bound by a settlement agreement. Instead, the focal point of the dispute is whether Defendants breached the contract. Specifically, Plaintiff argues that Defendants breached its promise to not to solicit Plaintiff's employees for a period of two years.[2] (ECF No. 2, PageID.179; ECF No. 1-2, PageID.112.) Plaintiff has provided three affidavits from its employees, all of whom allege that Defendants—particularly Defendant Bryan and

---

[2] Plaintiff, in passing, alleges that Defendants breached the settlement agreement by "(1) disparaging [Plaintiff]; (2) using [Plaintiff's] images in their marketing; (3) using the 'Superior' name; and (4) failing to take action to collect AR from customers." (ECF No. 2, PageID.180.) However, much of its legal analysis and evidence in support of a preliminary injunction center on Defendants' solicitation of employees. Thus, the court will not address these alternative theories of breach, especially since Plaintiff's reply failed to address Defendants' assertion that these other alleged breaches have been remedied. (*See, e.g.*, ECF No. 10, PageID.264, 267; ECF No. 10-3, PageID.290.)

Antonio Gonzalez and Alex Mora of Defendant JCB—improperly solicited them to work for Defendants. (ECF Nos. 1-3, 1-4, 1-5.) In rebuttal, Defendants argue that these three individuals have never "solicited any of Plaintiff's current or former employees in violation of the Settlement Agreement." (ECF No. 10, PageID.259.) Defendants provided three declarations from Defendant Bryan, Antonio Gonzalez, and Alex Mora attesting to that fact. (ECF Nos. 10-2, 10-3, 10-4.)

The court disagrees with Plaintiff's assessment that it has provided "substantial evidence" that it is likely to succeed on the merits, especially in light of Defendants' direct rebuttal its allegations. (ECF No. 13, PageID.312.) It places much weight on circumstantial evidence—namely that Defendants contacted some employees and invited them to a birthday party in August 2021. (ECF No. 1-2, PageID.112). But the settlement agreement does not prohibit any and all forms of contact with Plaintiff's employees, and a lack of specificity weakens Plaintiff's argument on this factor. Yet, considering all of the evidence, Plaintiff has presented—albeit not with overwhelming support—at least some questions going to the merits that constitute "fair ground for litigation and thus for more deliberate investigation." *Six Clinics*, 119 F.3d at 402. As a whole, this factor weighs slightly in favor of granting an injunction.

### B. Irreparable Harm

"Irreparable harm is an 'indispensable' requirement for a preliminary injunction, and 'even the strongest showing' on the other factors cannot justify a preliminary injunction if there is no 'imminent and irreparable injury.'" *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 391 (6th Cir. 2020) (quoting *D.T. v. Sumner Cty. Schs.*, 942 F.3d 324, 326-27 (6th Cir. 2019)). "If the plaintiff isn't facing imminent and

9

irreparable injury, there's no need to grant relief *now* as opposed to at the end of the lawsuit." *Sumner Cty. Schs.*, 942 F.3d at 327. The injury complained of "'must be both certain and immediate,' not 'speculative or theoretical.'" *Id.* (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)).

In addition, whether an injury is irreparable will turn on whether compensatory damages would be an adequate remedy for the harm suffered. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992) ("[H]arm is not irreparable if it is fully compensable by money damages."); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. E. F. Hutton & Co.*, 403 F. Supp. 336, 343 (E.D. Mich. 1975) ("[T]he concept of irreparable injury turns upon the inadequacy of compensatory damages."). And under many circumstances, "[t]he loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." *Certified Restoration*, 511 F.3d at 550 (quoting *Basicomputer Corp.*, 973 F.2d at 512).

Here, Plaintiff contends it would suffer irreparable harm, relying heavily on the timeline of the H-2B employee application process to demonstrate its position. Plaintiff explains that between January 3 and January 5, 2022, "employers must submit their H-2B Applications for Temporary Employment Certification . . . in a lottery with the [DOL] . . . for employment beginning April 1, 2022 or later for the 2022 landscaping season." (ECF No. 2, PageID.181-82.) This timeline is important because Plaintiff "suspects that Defendants intend to sponsor all or most of its H-2B employees in government submissions as soon as the next 30 days." (ECF No. 2, PageID.182.) According to Plaintiff, this would be problematic because "it will likely be unable to replace any H-2B workers improperly solicited . . . in time for the 2022 landscaping season," and that any

replacements "will not have the training that the existing H-2B employees have obtained." (*Id.*, PageID.183.) Moreover, "[i]f [Plaintiff] is not able to fulfill the number of workers listed in its H-2B submission," it could impact Plaintiff's "ability to participate in the H-2B program in future years as the DOL may decide that only a lower number of H-2B workers may be sponsored by [Plaintiff]." (*Id.*) Plaintiff claims that all of this, in turn, will harm its "competitive advantage, employee goodwill, and high reputation in the community." (*Id.*, PageID.184.)

While a business's loss of goodwill or reputation is a legitimate concern and is often found to constitute irreparable harm, the circumstances of this case present apparent roadblocks to a finding of irreparable harm.

First, the urgency of Plaintiff's motion appears to derive in large part from the fact that it could lose its H-2B employees, which in turn will hurt its business since it would not be able to fulfill contracts down the road. But to constitute irreparable harm, the alleged injury must be "certain and immediate." *Sumner Cty. Schs.*, 942 F.3d at 327. Much of Plaintiff's motion alleges speculative damage which would ultimately be suffered sometime in the future, at an unspecified time in mid-2022. Indeed, *if* Defendants actually solicited Plaintiff's employees, and *if* Defendants sponsor and hire any of these employees, Plaintiff *might* not be able to replace some employees by the time it must begin work on its unidentified contracts beginning at some point after April 1, 2022. This lack of imminency undercuts Plaintiff's alleged need "to grant relief *now* as opposed to at the end of the lawsuit." *Id.* Moreover, Plaintiff merely "suspects" that Defendants "intend to sponsor all or most of its H-2B employees"; nothing in the affidavits Plaintiff provided necessarily corroborates that allegation, making the risk of

harm more speculative than actual. "Although irreparable harm 'may be possible at some point in time,' plaintiff 'has not established that the injury is *likely*.'" *Apex Tool Grp., LLC v. Wessels*, 119 F. Supp. 3d 599, 609 (E.D. Mich. 2015) (quoting *NDSL, Inc. v. Patnoude*, 914 F. Supp. 2d 885, 899 (W.D. Mich. 2012)) (denying plaintiff's motion for preliminary injunction to prevent potential violations of a post-employment restrictive covenants and the use of trade secrets); *Sumner Cty. Schs.*, 942 F.3d at 327 (quoting *Griepentrog*, 945 F.2d at 154 ("[A]ll those 'ifs' rule out the 'certain and immediate' harm needed for a preliminary injunction.").

Next, the existence of a liquidated damages clause in the parties' settlement agreement undermines the notion that Plaintiff cannot be adequately compensated for its damages. (ECF No. 1-2, PageID.112.) "[W]hether or not the loss of customer goodwill amounts to irreparable harm often depends on the significance of the loss to the plaintiff's overall economic well-being." *Apex Tool Grp.*, 119 F. Supp. 3d at 609 (quoting *Nexteer Auto. Corp. v. Korea Delphi Auto. Sys. Corp.*, No. 13-CV-15189, 2014 WL 562264, at *10 (E.D. Mich. Feb. 13, 2014)). Here, Plaintiff notes that it does have contracts to fulfill sometime in 2022. However, on the facts alleged, the court is unconvinced that the possible loss of customer goodwill threatens to irreparably harm Plaintiff—it does not seem as though severe reputational harm, bankruptcy, or "complete destruction" of the business is at risk. *See id.* Indeed, if it can successfully prove on the merits that Defendants solicited employees in violation of the settlement agreement, the parties' settlement agreement provides a liquidated damages award of $30,000 per violation. (ECF No. 1-2, PageID.112.) Plaintiff has alleged ten violations for

an overall award at least $300,000. (ECF No. 1, PageID.21, 37.) In short, Plaintiff has not established that it cannot be adequately compensated for any potential harm.

Overall, Plaintiff has not established an injury that is "certain and immediate," *Sumner Cty. Schs.*, 942 F.3d at 327, nor one that will result in an irreparable loss to its "overall economic well-being." *Apex Tool Grp.*, 119 F. Supp. 3d at 609. This factor therefore weighs against granting a preliminary injunction.

### C. Substantial Harm to Others

Courts must also consider the harm to others if an injunction were granted and "balance the equities." *See Liberty Coins*, 748 F.3d at 689-90; *see also Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018). Plaintiff asserts that "Defendants will not be harmed whatsoever if injunctive relief is granted," while Plaintiff, on the other hand, would suffer harm to its reputation or goodwill without an injunction. (ECF No. 2, PageID.184.)

The injunction requested by Plaintiff appears overbroad such that it could impact the rights of Defendants or Plaintiff's current and former employees. The crux of Plaintiff's motion is to stop solicitation and protect its employees from leaving its company. Thus, Plaintiff asks the court to enjoin Defendant from, *inter alia*, "[c]ontacting, soliciting or hiring any of [Plaintiff's] employees, including H-2B employees," and "[f]iling any forms with the Department of Labor or any other governmental agency that identified any of [Plaintiff's] . . . employees." (ECF No. 2, PageID.166; ECF No. 2-1, PageID.189.) The problem with this request, however, is that the parties' settlement agreement expressly contemplates contact between Defendants and Plaintiff's employees, so long as Defendants do not improperly solicit the

employees. (ECF No. 1-2, PageID.112.) Specifically, the non-solicitation provision of the settlement agreement states that "it will not be a violation of this paragraph if current or former employees of [Plaintiff] apply for a position with Defendants of their own accord." (*Id.*) An injunction of this scope could harm the economic rights of an employee who wishes to work for Defendants, as well as Defendants' contractual right to hire Plaintiff's employees. And to the extent Plaintiff believes solicitation has already occurred, it is unclear what preliminarily enjoining further solicitation could help solve; in other words, the damage has been done, and the issue now is whether Plaintiff can prove it. *See CDI Energy Servs. v. W. River Pumps, Inc.*, 567 F.3d 398, 403 (8th Cir. 2009) (upholding district court decision denying preliminary injunction where the "wrongful appropriation of [the plaintiff's] clients . . . [was] already carried out," and court "did not want to order (and lacked the authority to order) the customers to cease doing business with defendants and return to [the plaintiff's company]").

Given the potential effect on the rights of Defendants and Plaintiff's employees, this factor weighs slightly against granting an injunction.

### D. Public Interest

"[T]he enforcement of voluntarily assumed contract obligations" is a strong public interest, as is the need to prevent unfair competition. *Certified Restoration*, 511 F.3d at 550. Defendants are obligated to refrain from soliciting any of Plaintiff's employees, which weighs in favor of granting a preliminary injunction. Yet, this factor must be weighed against the others.

**E. Weighing the Factors**

The court holds that the "extraordinary and drastic remedy" of a preliminary injunction is not warranted in this case. *See S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (quoting *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)). While there is marginal evidence that it is likely to succeed on the merits—thus also implicating the public interest of enforcing contracts—Plaintiff's showing of irreparable harm is simply insufficient. This factor is characterized as an "indispensable requirement" for a preliminary injunction, *Hargett*, 978 F.3d at 39, and Plaintiff has failed to establish it. Moreover, an injunction in this case would bear a risk of prohibiting Defendants from exercising their contractual rights and restricting Plaintiff's employees from enjoying their economic freedom. There is no need to preserve a status quo before the court can hear this case on the merits, especially where an expedited discovery track could aid the parties to quickly resolve a straightforward dispute.

**IV. CONCLUSION**

In summary, a preliminary injunction should be awarded only "upon a clear showing that the plaintiff is entitled to such relief." *Great Lakes Brewing Co.*, 860 F.3d at 849 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, (2008)). Plaintiff has not met this burden. Accordingly,

IT IS ORDERED that Plaintiff's Emergency Motion for Preliminary Injunction (ECF No. 2) is DENIED.

IT IS FURTHER ORDERED that the parties are DIRECTED to confer and file

with this court a joint proposed discovery plan, addressing all relevant deadlines, by

**Monday, January 17, 2022**.


                                         s/Robert H. Cleland                        /
                                         ROBERT H. CLELAND
                                         UNITED STATES DISTRICT JUDGE

Dated:  January 3, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, January 3, 2022, by electronic and/or ordinary mail.

                                         s/Lisa Wagner                             /
                                         Case Manager and Deputy Clerk
                                         (810) 292-6522


S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\21-12889.SUPERIORSCAPE.DenyingPreliminaryInjunction.MAZ.docx